**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MATTHEW HALE,

      Petitioner - Appellant,

v.

JACK FOX, Warden,

      Respondent - Appellee.

No. 14-1294

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:14-CV-01233-LTB)**
_____

O. Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

Michael C. Johnson, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the briefs), Office of the United States Attorney for the District of Colorado, Denver, Colorado, appearing for Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

     Matthew Hale was convicted of obstruction of justice and soliciting the murder of

a federal judge. After filing an unsuccessful motion for collateral relief under 28 U.S.C.

§ 2255, he filed a habeas corpus application under 28 U.S.C. § 2241, seeking relief on

two grounds. First, he claimed that, because the evidence at trial was insufficient to establish guilt under the solicitation and obstruction statutes, he was "actually innocent." Second, he claimed that possible juror misconduct, which he learned about after his § 2255 motion had been denied, may have deprived him of his right to an impartial jury. The district court denied the § 2241 application under § 2255(e) for lack of statutory jurisdiction, and Mr. Hale appeals.[1]

Mr. Hale's application is barred under this court's interpretation of § 2255(e) in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Legal Background*

**1. Statutory Framework**

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may file a motion to "vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). This motion must be filed "in the district court where sentence was imposed." *Sines v. Wilner*, 609 F.3d 1070, 1073 (10th Cir. 2010). A prisoner may generally seek § 2255 relief only once, but may file a "second or successive motion" by obtaining certification from a court of appeals that the proposed motion contains:

---

[1] A federal prisoner is not required to obtain a certificate of appealability to seek review of a district court's denial of a habeas application under § 2241. *Eldridge v. Berkebile*, 791 F.3d 1239, 1241 (10th Cir. 2015).

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h); *see* § 2244(b).

A § 2255 motion is ordinarily the only means to challenge the validity of a federal conviction following the conclusion of direct appeal. *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011). But "in rare instances," *Sines*, 609 F.3d at 1073, a prisoner may attack his underlying conviction by bringing a § 2241 habeas corpus application under the "savings clause" in § 2255(e). *Brace*, 634 F.3d at 1169. That clause provides:

An application for a writ of habeas corpus [(§ 2241)] in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section [(§ 2255)], shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion [(§ 2255)] is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). Thus, a federal prisoner may file a § 2241 application challenging the validity of his sentence only if § 2255 is "inadequate or ineffective to test the legality of his detention." *Abernathy v. Wandes*, 713 F.3d 538, 547 (10th Cir. 2013).[2] The

---

[2] The principal purpose of a § 2241 application is to challenge the execution, rather than the validity, of a federal prisoner's sentence. *Cleaver v. Maye*, 773 F.3d 230, 232 (10th Cir. 2014). If, for instance, a prisoner seeks to challenge certain "matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters . . . affecting the fact or duration of the [prisoner's] custody," that claim must be raised in a § 2241 application rather than a § 2255 motion. *McIntosh v. U.S. Parole*

Continued . . .

application must be brought "in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

## 2. Legislative History

This framework for post-conviction review is the product of legislation enacted in 1789, 1867, 1948, and 1996.

### a. *Original Writ of Habeas Corpus*

"The Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 81–82, empowered federal courts to issue writs of habeas corpus to prisoners 'in custody, under or by colour of the authority of the United States.'" *McCleskey v. Zant*, 499 U.S. 467, 477-78 (1991). "In 1867, the writ was made available to any federal prisoner 'restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States.'" *Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997) (quoting Act of February 5, 1867, ch. 28 § 1, 14 Stat. 385). The original habeas statute survives today in § 2241, which extends habeas corpus to federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see* Brian R. Means, Postconviction Remedies § 5:7 (2015).

### b. *Enactment of § 2255 and the Savings Clause*

As explained above, a prisoner must bring a § 2241 application in the district where he or she is incarcerated. *Bradshaw*, 86 F.3d at 166. Because federal prisons were

---

*Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997). Mr. Hale's case does not implicate this aspect of § 2241.

clustered in a limited number of states, federal courts in those states were "required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court." *United States v. Hayman*, 342 U.S. 205, 214 (1952). In 1942, the Judicial Conference of the United States appointed a committee to study these "serious administrative problems" and propose reforms. *Id.* at 212, 214.

The committee's report, submitted to Congress in 1944, recommended "creat[ing] a statutory remedy consisting of a motion before the court where the movant has been convicted." *Id.* at 216 (quotation omitted). The proposed motion would "broadly cover[] all situations where the sentence is 'open to collateral attack.' As a remedy, it [wa]s intended to be as broad as habeas corpus." *Id.* at 217 (quotation omitted). By requiring prisoners to file in the court of conviction, the proposal was designed to distribute the work of collateral review more evenly among the federal courts. *See id.* at 213-18. Congress responded in 1948 by enacting § 2255, which aimed "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Hayman*, 342 U.S. at 219.

The act that established the § 2255 remedy also included what we now know as the savings clause, § 2255(e). As it appeared in the first draft of that bill, it provided:

> No circuit or district judge of the United States shall entertain an application for writ of habeas corpus in behalf of any prisoner who is authorized to apply for relief by motion pursuant to the provisions of this section, unless it appears that it has not been or will not be practicable to have his right to discharge from custody determined on such motion because of the necessity of his presence at the hearing, or for other reasons.

*Wofford v. Scott*, 177 F.3d 1236, 1239 (11th Cir. 1999) (quotation omitted) (emphasis from *Wofford* omitted). The Senate eventually passed this version of the bill, but it died without a vote in the House. *Id.* at 1241.

Congress then incorporated a different formulation of the savings clause into a comprehensive overhaul of the judicial code. *Id.* The new version, which passed in 1948 and resides today in § 2255(e), provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

c. *The Antiterrorism and Effective Death Penalty Act of 1996*

In April 1996, Congress passed and the president signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Houchin v. Zavaras*, 107 F.3d 1465, 1468 (10th Cir. 1997). Prisoners had previously been permitted to raise "new legal or factual claims in a second or subsequent habeas petition . . . if the applicant had not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." *Daniels v. United States*, 254 F.3d 1180, 1189 (10th Cir. 2001) (en banc) (quotation and brackets omitted). AEDPA altered this scheme, imposing limits on the types of claims a prisoner could assert in a second or successive § 2255 motion. Congress added § 2255(h) as part of AEDPA:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

In enacting AEDPA, Congress revised § 2255 in several other ways—for example, by adding § 2255(f), which imposes a one-year limitations period for bringing § 2255 motions. *See United States v. Denny*, 694 F.3d 1185, 1187 (10th Cir. 2012).[3] But AEDPA left § 2255(e) unchanged, and nothing in the statute's legislative history indicates how, if at all, the addition of § 2255(h) was intended to affect the meaning or scope of the savings clause. *See Wofford*, 177 F.3d at 1241 n.2 (explaining that neither the Seventh nor Eleventh Circuit has been able "to find anything useful in AEDPA's legislative history relating to the savings clause").

\* \* \* \*

---

[3] Mr. Hale filed his § 2241 application three years after the juror foreman testified. The Government did not respond. On appeal, it said Mr. Hale's initial § 2255 motion was timely and did not address the timeliness of his § 2241 application. Aplee. Br. at 2-3; Suppl. Aplee. Br. at 1-3. Whether or not § 2255(f)'s statute of limitations for § 2255 motions applies to § 2241 applications—§ 2241 has no limitations provision—the Government waived or at least forfeited a timing objection here. Under these circumstances, we do not address this issue. *See Wood v. Milyard*, 132 S. Ct. 1826, 1830 (2012) (holding a court abuses its discretion by "resurrecting" a post-conviction statute of limitations defense when the government has waived it); *Day v. McDonough*, 547 U.S. 198, 202, 205, 209 (2006) (recognizing discretion to proceed when such a defense is forfeited).

In sum, the 1948 legislation shifted venue for federal prisoners' collateral review from the district of confinement to the sentencing court unless the savings clause applies. The 1996 legislation limited opportunities for § 2255 consideration. This history is important to understanding this court's decision in *Prost*.

### B. *Factual and Procedural Background*

### 1. Mr. Hale's Convictions

Mr. Hale served as the "Pontifex Maximus" of the white-supremacist World Church of the Creator ("World Church"). *United States v. Hale*, 448 F.3d 971, 975 (7th Cir. 2006) (per curiam). In 2000, a religious organization known as the Church of the Creator sued the World Church for trademark infringement in the Northern District of Illinois. *Id.* After the Seventh Circuit reversed the grant of summary judgment to the World Church, the district court "entered a detailed order requiring the World Church to stop using variations of the trademarked name 'Church of the Creator,' to turn over books and other materials bearing the name or obliterate any infringing mark from them, and relinquish custody of the domain names of the World Church's websites to the [Church of the Creator]." *Id.* Mr. Hale sent the district court a letter dated December 12, 2002, advising that he had "no material in [his] control or possession that f[ell] afoul of [the order]." *Id.* at 978 (first brackets in original).

In 2003, Mr. Hale was indicted on three counts of obstructing justice, in violation of 18 U.S.C. § 1503, and two counts of soliciting a crime of violence, in violation of 18 U.S.C. § 373. One of the obstruction counts was based on his December 12, 2002 letter, which allegedly stated falsely that he had no infringing materials in his possession. *Id.* at

- 8 -

979. Another obstruction count and one solicitation count alleged Mr. Hale had recruited Tony Evola to murder Joan Humphrey Lefkow, the district court judge who had presided over the Church of the Creator's trademark infringement suit. *Id.* The other charges are not relevant to this appeal.

According to the trial evidence, Mr. Hale asked Mr. Evola to find home addresses for Judge Lefkow and three attorneys representing the Church of the Creator. *Id.* at 978. Mr. Hale and Mr. Evola, who turned out to be a government informant, also had several conversations in December 2002 about the possibility of murdering Judge Lefkow. *Id.* at 978-79. During these tape-recorded conversations, Mr. Hale repeatedly said he could not be involved in any illegal activity. *Id.* But the Government argued he said this only to "create 'plausible deniability,'" while also speaking in "code" that tacitly encouraged Mr. Evola to carry out the assassination. *Id.* at 982-83.

After the jury convicted him of soliciting Judge Lefkow's murder and of three counts of obstructing justice, Mr. Hale filed a motion for acquittal under Federal Rule of Criminal Procedure 29(c), arguing the evidence was insufficient to sustain his convictions. *Id.* at 981. The district court granted the motion only with respect to an obstruction charge not at issue in this appeal, leaving in place convictions for "solicitation and obstruction in connection with [Mr. Hale's] efforts to have Judge Lefkow killed, and obstruction in connection with his letter of December 12, 2002, to the judge." *Id.* Mr. Hale received a sentence of 480 months in prison. *Id.* at 982.

## 2. Direct Appeal

On direct appeal, Mr. Hale argued there was insufficient evidence to support the solicitation and obstruction convictions regarding the plot to kill Judge Lefkow. *Id.* He insisted one of his conversations with Mr. Evola "demonstrate[d] conclusively that he opposed Evola's plan and that no rational jury could have concluded that his comments suggesting otherwise were meant to be taken seriously." *Id.*

The Seventh Circuit explained that "to meet its burden of proof on the solicitation count, the government had to establish (1) with 'strongly corroborative circumstances' that Hale intended for Tony Evola to arrange the murder of Judge Lefkow; and (2) that Hale solicited, commanded, induced, or otherwise tried to persuade Evola to carry out the crime." *Id.* (citing 18 U.S.C. § 373). The court rejected Mr. Hale's contention that he was merely a bystander to Mr. Evola's murder plot, observing that "Hale's statements that he did not wish to participate in illegal conduct do not call into question the jury's findings with respect to his intent." *Id.* at 984. It said the "government convincingly portrayed Hale as a leader who encouraged each follower to act 'according to the dictates of his own conscience'—in reality Hale's conscience—while verbalizing his own commitment to following the law." *Id.* Concluding the government had produced sufficient evidence of both solicitation elements, the Seventh Circuit affirmed Mr. Hale's convictions. *Id.* at 983-85, 989.

## 3. § 2255 Motion

Mr. Hale timely filed a § 2255 motion in the Northern District of Illinois. *Hale v. United States*, No. 1:08 CV 94, 2010 WL 2921634, at *1 (N.D. Ill. July 22, 2010). He

- 10 -

alleged (1) a Sixth Amendment ineffective assistance of counsel claim, and (2) a claim, under the Fifth Amendment and Federal Rule of Criminal Procedure 43(a), that he was improperly excluded from portions of voir dire. *Id.* at *1, 34. In a thorough written order, the district court denied Mr. Hale's § 2255 motion. *Id.* at *37. It subsequently denied a Rule 59(e) motion to reconsider. *Hale v. United States*, 2011 WL 5104630, at *11 (N.D. Ill. Oct. 27, 2011). The Seventh Circuit affirmed. *Hale v. United States*, 710 F.3d 711, 716 (7th Cir. 2013).

**4. § 2241 Application**

On April 30, 2014, Mr. Hale, who is incarcerated at the federal penitentiary in Florence, Colorado, filed a § 2241 habeas corpus application in the U.S. District Court for the District of Colorado. He brought eight claims, alleging in each that he was entitled to seek § 2241 relief because the § 2255 motion had been "inadequate or ineffective to test the legality of his detention." ROA at 9-14. Mr. Hale presses only Claims One and Seven on appeal.

Claim One asserted violations of Mr. Hale's Fifth Amendment due process right and Eighth Amendment right to be free of cruel and unusual punishment on the ground that he was "being imprisoned for conduct that the law does not make criminal." ROA at 9. Specifically, Mr. Hale argued the conduct proved at trial—merely "'[a]llowing' a government informant to commit murder, or telling that informant that he can do what he wants, or refraining from stopping the informant from committing the informant's own fictitiously-desired crime, or refraining from telling him ***not*** to commit the crime"—fell outside the scope of the solicitation and obstruction statutes. ROA at 9 (emphasis in

- 11 -

original).  In his briefing to this court, Mr. Hale refers to this portion of his application as a "claim of innocence," Aplt. Br. at 10, explaining he is "innocent of the crimes of conviction, both as a matter of law and fact," *id.* at 2.[4]

Claim Seven asserted violations of Mr. Hale's "Fifth Amendment right to a fair trial and . . . Sixth Amendment right to an impartial jury."  ROA at 13.  Unlike Claim One, this claim was based on newly discovered evidence.  In January 2001, at a trial in a different case, the foreman of Mr. Hale's jury testified that the day after becoming a juror in Mr. Hale's case, he learned of a *Chicago Tribune* article that mentioned someone with his job title—a chief financial officer and assistant dean at Northwestern University—had been empaneled in Mr. Hale's case.  The foreman said he "remember[ed] my partner and I talking about [how] we were both upset and afraid because there's not that many assistant deans at Northwestern and before I left [for jury duty], I put a big note on my door saying 'I'm out for jury duty' and on my voice-mail, 'I'm out for jury duty.'"  ROA at 49-50.  According to the foreman,

> I was worried about my safety and my partner's safety because it was—I'm a white person with an African-American man and we had known that [a former member of the World Church] went on a shooting rampage after being part of Matthew Hale's group, and so that was his way of showing obedience or faith to Matthew Hale, and I felt really vulnerable.

*Id.* at 50.

---

[4] This claim is conceptually different from what the Supreme Court calls "actual innocence" claims, which involve the production of new evidence affirmatively demonstrating the prisoner is innocent of the charged crimes. *See United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004) (citing *Schlup v. Delo*, 513 U.S. 298, 328 (1995)).

Mr. Hale also alleged in Claim Seven that when the trial judge polled jurors mid-trial to ask whether they had been exposed to any media coverage about the case, the foreman failed to raise his hand. The § 2241 application claimed the foreman "d[id] not possess the necessary objective state of mind to meet the requirements of the Fifth and Sixth Amendments." ROA at 14. Mr. Hale requested an evidentiary hearing to question the foreman about his exposure to outside media during the trial.[5]

The district court dismissed Mr. Hale's § 2241 application for lack of statutory jurisdiction as to both Claims One and Seven. It concluded Mr. Hale had not shown § 2255 was inadequate or ineffective to test those claims. Because the court found it lacked jurisdiction, it did not address the merits of Mr. Hale's claims. It also did not address Mr. Hale's request for an evidentiary hearing.

Mr. Hale filed a Rule 59(e) motion to alter the judgment, which the district court denied.

## II. DISCUSSION

Mr. Hale appeals the dismissal of Claims One and Seven. Because neither claim satisfies the § 2255(h) requirements for a second or successive § 2255 motion, Mr. Hale may proceed under § 2241 only if his claims qualify under the § 2255(e) savings clause. He bears the burden of showing he satisfies § 2255(e). *Abernathy*, 713 F.3d at 549. He has not done so.

---

[5] For ease of reference, we describe these allegations together as Mr. Hale's "juror misconduct claim."

- 13 -

## A. *Standard of Review*

"When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous." *al-Marri v. Davis*, 714 F.3d 1183, 1186 (10th Cir. 2013).

## B. *Claim One*

Claim One alleged the trial court erred when it permitted the jury to convict him based on the evidence introduced at trial. To the extent Mr. Hale contends that § 2255 was "inadequate or ineffective" to test his "innocence claim," the argument is unavailing.

### 1. Procedural Bar

Mr. Hale made a Rule 29(c) sufficiency-of-the-evidence motion after the jury returned its verdict. That motion called for a legal determination of whether the facts proved at trial satisfied the elements of the relevant statutes. *See United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003) (explaining that defendant's Rule 29 motion for judgment of acquittal "allege[d] that the government failed to . . . prove . . . [certain] elements of the mail and wire fraud offenses underlying the conspiracy charge"); *United States v. White*, 582 F.3d 787, 803 (7th Cir. 2009). The district court denied the motion. On direct appeal, Mr. Hale made the same sufficiency argument to the Seventh Circuit, which also rejected it.

Because the Seventh Circuit considered and resolved that claim, Mr. Hale could not bring it again in his § 2255 motion. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) ("A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. Issues that were raised on direct appeal may not be reconsidered on a

§ 2255 motion absent changed circumstances." (quotation omitted)). This procedural bar does not render § 2255 "inadequate or ineffective" under § 2255(e). *See Zelaya*, 798 F.3d at 1370 ("It is by now abundantly clear that the mere fact that a defendant faces a procedural bar in his first § 2255 motion[,] such as a limitations period or procedural default does not render the § 2255 motion *itself* inadequate." (quotation omitted) (emphasis and brackets in original)); *Ivy v. Pontesso*, 328 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he fact that [the prisoner] is procedurally barred from raising [his claim] now does not mean that § 2255's remedy was 'inadequate or ineffective.'").

## 2. No Actual Innocence Gateway

Mr. Hale's attempt to bypass § 2255(e) and obtain § 2241 review by labeling his claim one of "actual innocence" does not change the analysis. Aplt. Br. at 48. A prisoner can establish actual innocence in post-conviction proceedings only by bringing forward new exculpatory evidence. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). Mr. Hale has produced no new evidence; he instead reasserts the legal insufficiency of the evidence introduced at trial. Even if actual innocence were a valid basis for bypassing § 2255(e), therefore, it would not be available to Mr. Hale because he relies solely on the trial evidence. In short, he does not make a post-conviction actual innocence claim.

## 3. Application of § 2255(e) Is Constitutional

Mr. Hale insists that barring his claim under § 2241 would be unconstitutional because "there <u>must</u> be a remedy for the verifiably innocent person" who is imprisoned for conduct the law does not make criminal. Aplt. Br. at 18 (emphasis in original). This argument ignores the opportunities Mr. Hale already has had to pursue this claim.

- 15 -

As explained above, he contested in district court and on appeal whether the trial evidence was sufficient to establish guilt under the solicitation and obstruction statutes. He proffers no new evidence. We see no basis to conclude that the district court's application of § 2255(e) to this claim was constitutionally infirm. Mr. Hale has not cited any authority suggesting the Constitution entitles him to another bite at the sufficiency-of-the-evidence apple. *See Jiminian v. Nash*, 245 F.3d 144, 147-48 (2d Cir. 2001) ("We now hold that § 2255 is not inadequate or ineffective, such that a federal prisoner may file a § 2241(c)(3) petition, simply because a prisoner cannot meet the AEDPA's gate-keeping requirements, provided that the claim the prisoner seeks to raise was previously available on direct appeal or in a prior § 2255 motion.").

\* \* \* \*

Accordingly, because Mr. Hale cannot overcome the procedural bar to § 2255 review of an issue raised on direct appeal and cannot otherwise satisfy § 2255(e), the district court properly denied § 2241 review, and we affirm the district court's denial of Claim One.

### C. *Claim Seven*

Mr. Hale contends § 2255 was inadequate or ineffective under § 2255(e) to test his juror misconduct claim because he had not and could not have discovered the factual basis for raising that claim until after his § 2255 motion had already been denied. He further argues that denying him any opportunity to bring his juror misconduct claim would raise serious constitutional concerns, and § 2255(e) should therefore be read to permit him recourse to § 2241 to avoid those concerns.

- 16 -

*Prost*'s interpretation of § 2255(e) bars Mr. Hale's inadequate-or-ineffective claim, and he has not shown that constitutional avoidance applies.

### 1. Mr. Hale's Claim Fails Under *Prost*

#### a. Prost*'s § 2255(e) Gatekeeping Rule*

In 1999, Keith Prost pled guilty in the Eastern District of Missouri to two counts of money-laundering. *Prost*, 636 F.3d at 580. His § 2255 motion was denied in 2004. *Id.* Four years later, in *United States v. Santos*, 553 U.S. 507 (2008), the Supreme Court held that "the term 'proceeds' in the federal money laundering statute, 18 U.S.C. § 1956, means 'profits,' and not just 'gross receipts.'" *Id.* Claiming his laundered funds were gross receipts rather than profits, Mr. Prost "filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, asking to have his money laundering conspiracy convictions reopened and overturned." *Id.* at 580-81. He argued his § 2255 motion had been inadequate or ineffective to raise his new claim because (1) *Santos* was not decided until after he filed his § 2255 motion, and (2) Eighth Circuit case law at the time of that motion had foreclosed the profits-gross receipts distinction that *Santos* announced. *Id.* at 588-90.

In rejecting Mr. Prost's attempt to challenge his conviction under § 2241, *Prost* announced a rule for § 2241 gatekeeping: "The relevant metric or measure, we hold, is whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion. If the answer is yes, then the petitioner may not resort to the savings clause and § 2241." *Id.* at 584.

Even though the Supreme Court's decision in *Santos* came after Mr. Prost's § 2255 motion was resolved, the timing of *Santos* did not make his § 2255 motion

inadequate or ineffective, *Prost* held, because the "§ 2255 remedial vehicle was fully available and amply sufficient to test the [profits-gross receipts] argument, whether or not Mr. Prost thought to raise it." *Id.* at 589. The "fact that Mr. Prost or his counsel may not have *thought* of a *Santos*-type argument earlier doesn't speak to the relevant question whether § 2255 *itself* provided him with an adequate and effective remedial mechanism for testing such an argument." *Id.* (emphasis in original).

Mr. Prost's "'erroneous circuit foreclosure' test"—i.e., the notion that he should be permitted to invoke § 2241 because the Eighth Circuit, where he was convicted, had previously ruled the profits-gross receipts distinction was irrelevant—also failed. *Id.* at 590.[6] Mr. Prost was "entirely free to raise and test a *Santos*-type argument in his initial § 2255 motion." *Id.* at 590. When the district court denied that claim, Mr. Prost could have attempted to seek en banc review in the Eighth Circuit or petition the Supreme Court for certiorari. *Id.* at 590-91.

Section 2255(h), which lists the permissible bases for bringing a second § 2255 motion, heavily influenced *Prost*'s reading of § 2255(e). Congress decided "that only certain claims it has deemed particularly important—those based on newly discovered evidence suggestive of innocence, or on retroactively applicable constitutional decisions—may be brought in a second or successive motion." *Id.* at 583-84. *Prost* said

---

[6] *Prost* did not decide whether Eighth Circuit law foreclosed the profits-gross receipts distinction at the time Mr. Prost filed his § 2255 motion, but the opinion makes clear that even assuming the argument was foreclosed, § 2241 review through § 2255(e) was not available to Mr. Prost. *Prost*, 636 F.3d at 590-93.

that in enacting § 2255(h), Congress intended § 2255(e) to be no broader than the

exceptions contained in subsections (h)(1) and (h)(2). *Id.* at 585-86. Congress's

limitation of a second collateral attack to the two § 2255(h) circumstances means, *Prost*

said, that no other circumstances could justify a second post-conviction challenge,

including a § 2241 challenge. *Id.* Permitting a second challenge under § 2241 in

circumstances not contained in § 2255(h) would render that subsection's limitations

"effectively pointless." *Id.* at 586.[7]

*Prost* mentioned only two examples in which § 2255 was inadequate or

ineffective: *Spaulding v. Taylor*, 336 F.2d 192 (10th Cir. 1964), and *Ackerman v. Novak*,

---

[7] In several places, *Prost* might be read to suggest a prisoner is entitled to one adequate and effective opportunity to test any given claim or argument, rather than one opportunity to test the legality of his conviction or sentence. *E.g.*, *id.* at 587 ("The emphasis on providing a single opportunity to test *arguments*, rather than any guarantee of relief or results, can be found throughout §§ 2255 and 2254." (emphasis added)); *id.* at 588 ("Having held that the savings clause is satisfied so long as a petitioner could've raised his *argument* in an initial § 2255 motion, it is obvious Mr. Prost's effort to invoke the clause must fail." (emphasis added)).

But read as a whole, especially in light of the concern about rendering § 2255(h) "a meaningless gesture," *id.* at 586 (quotation omitted), *Prost* indicated that once a prisoner has brought an unsuccessful collateral attack, a second is permitted only by satisfying § 2255(h)—whether or not the new claim was meaningfully available at the time of the first challenge. *See, e.g.*, *id.* at 585 ("[T]he immediate context in which the savings clause appears reveals that it doesn't guarantee *multiple* opportunities to test a conviction or sentence." (emphasis in original)); *id.* at 586 ("[I]t is evident that a prisoner generally is entitled to only *one* adequate and effective opportunity to test the legality of his detention, in his *initial* § 2255 motion." (emphasis in original)); *id.* ("No one is entitled to more than one collateral attack." (quotation omitted)); *id.* at 588 ("[T]he history of the [savings] clause illustrates that Congress's purpose in enacting it surely wasn't to ensure that a prisoner will win relief on a meritorious successive motion, or receive *multiple bites at the apple*." (emphasis added)); *id.* at 589 ("The simple fact is that Congress decided that, unless subsection (h)'s requirements are met, finality concerns trump and the litigation must stop after a first collateral attack.")).

483 F.3d 647 (10th Cir. 2007). In *Spaulding*, "the defendant's sentencing court had been abolished by the time the prisoner sought to bring his initial collateral attack." *Id.* at 588. In *Ackerman*, the prisoner was a member of the armed forces whose military court martial "literally dissolve[d] after sentencing and [wa]s no longer available to test [his] collateral attack" through a § 2255 motion. *Id.* Although these references might suggest the savings clause can be satisfied only when the sentencing court does not exist, *see id.* at 593 (explaining we have permitted access to § 2241 "only when a court is unavailable to entertain a § 2255 petition"), *Prost* did not expressly endorse or foreclose this view. *Prost* said its savings clause interpretation comports with the legislative history because the 1948 legislation enacting § 2255 simply reallocated venue among the federal courts. *Id.* at 587-88. It added, however, "This isn't to say that the language Congress employed in the savings clause is necessarily limited only to remedying venue problems." *Id.* at 588.

Finally, although *Prost* denied § 2241 review, it observed that a defendant might be able to "proceed to § 2241 . . . when the application of § 2255(h)'s bar against a second or successive motion for collateral review would seriously threaten to render the § 2255 remedial process unconstitutional." *Id.* at 593. Because Mr. Prost had not raised this constitutional-avoidance argument, *Prost* left "for another day" (1) "[w]hether the savings clause may be used . . . to avoid serious constitutional questions arising from application of § 2255(h)," and (2) "whether, when, and how the application of § 2255(h)'s limits on second or successive motions might (ever) raise a serious constitutional question." *Id.*

- 20 -

b. Prost *Bars Mr. Hale's Juror Misconduct Claim*

In *Prost*, this court did not face or anticipate the circumstances presented in Mr. Hale's case. Like Mr. Prost, Mr. Hale seeks collateral review after the denial of an initial § 2255 motion, and his new claim does not satisfy the § 2255(h) requirements for a second § 2255 motion. But unlike Mr. Prost, who sought § 2241 review based on the Supreme Court's having interpreted the law in a manner that could undo his conviction, Mr. Hale seeks § 2241 review based on new and previously undiscoverable evidence of possible juror misconduct. *Prost* denied § 2241 review because Mr. Prost had "a *chance* to *test* his sentence or conviction" in his initial § 2255 motion, *id.* at 587 (emphasis in original); he could have presented the legal argument then, even though circuit precedent foreclosed it, hoping that further appellate or Supreme Court review might accept it. *See Abernathy*, 713 F.3d at 551. Mr. Hale, by contrast, did not have "a *chance* to *test*" his juror misconduct claim in his initial § 2255 motion because he did not have the facts to allege the claim before the one-year limitations period in § 2255(f)(1) expired. It is therefore difficult to conclude that his claim "could have been tested."[8]

---

[8] Mr. Hale could have refrained from bringing a § 2255 motion in the year after his conviction became final in the hope that new facts might one day surface to support a claim of jury misconduct, which he could then bring in a § 2255 motion up to one year after "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." § 2255(f)(4). But this route would require him to forfeit his only known opportunity to challenge his conviction as a means of guarding against the remote possibility that unknowable future facts might someday materialize. It is doubtful that such a wait-and-hope approach could be considered adequate and effective. But even assuming Mr. Hale could not have "tested" his claim this way, he would still be unable to access § 2241 review through § 2255(e) because his juror misconduct claim does not satisfy § 2255(h), as explained below.

Nonetheless, *Prost* forecloses Mr. Hale's § 2241 application because it held that § 2255(e) does not extend to second and successive collateral claims that fail to meet § 2255(h). *See Prost*, 636 F.3d 585-86. Because Mr. Hale cannot satisfy § 2255(h), he cannot, under *Prost*, satisfy § 2255(e), and § 2241 review must be denied. In § 2255(h), Congress permitted a second collateral attack when a prisoner offers new, exculpatory evidence. It did not authorize successive motions based on new evidence of a procedural constitutional violation at trial, such as infringement of the right to an impartial jury. The absence of such a circumstance in § 2255(h) means, under *Prost*, Mr. Hale's "litigation must stop." *Id.* at 589.[9]

## 2. Mr. Hale Has Not Shown that Prohibiting Access to § 2241 Would Raise Serious Constitutional Concerns

Mr. Hale, seizing upon the constitutional avoidance language in *Prost*, argues that applying § 2255(e) to bar his § 2241 juror misconduct claim would raise serious concerns under the Due Process and Suspension Clauses. Invoking the canon of constitutional avoidance, he urges us to adopt an interpretation of § 2255(e) that would allow his claim to go forward.

The canon applies only if a statute is subject to more than one plausible interpretation, and one of them presents "serious concerns about the statute's

---

[9] As noted above, *Prost* may be read as understanding § 2255 to be inadequate or ineffective only when the sentencing court no longer exists to decide a § 2255 motion. Under that reading, we must affirm because the Northern District of Illinois remained open for business. But *Prost* does not squarely limit § 2255(e) to such circumstances. It speaks generally of whether a claim "could have been tested."

constitutionality." *Gonzalez v. United States*, 553 U.S. 242, 251 (2008) (quotation omitted). Whether or not § 2255(e) is subject to more than one plausible explanation, Mr. Hale has not shown that applying *Prost* to his case would give rise to "serious" constitutional concerns.

a. *The Due Process Clause*

Mr. Hale first contends that denying review of his jury misconduct claim might raise Due Process Clause concerns. He states, "[t]he core of due process is the right to notice and a meaningful opportunity to be heard," and if he "is barred from accessing § 2241, his claim of juror misconduct will never be heard in any judicial forum, through no fault of his own." Aplt. Suppl. Br. at 19 (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). But Mr. Hale fails to identify the basis for his due process interest in collateral review beyond the procedure he has already received.

Procedures for post-conviction review may not "transgress[] any recognized principle of fundamental fairness in operation." *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009). Thus, when Congress affords prisoners a certain post-conviction remedy, due process requires they also have access to procedures that are "fundamentally []adequate to vindicate the substantive rights provided." *Id.* To make out a procedural due process violation in this context, a prisoner must show (1) a substantive "parent right" that derives from a source such as Congress's statutory post-conviction scheme, and (2) lack of procedures adequate to assert and protect that right. *Id.* at 68.

- 23 -

Mr. Hale falters at step one. He claims his right to an impartial jury may have been violated and that "due process specifically mandates a hearing on credible claims of juror partiality." Aplt. Suppl. Br. at 19 (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). But the cases he cites do not establish a due process liberty interest in challenging his conviction on these grounds after already unsuccessfully bringing one round of collateral review. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (explaining that under the Due Process Clause, "[s]tates have no obligation to provide [collateral attack]"). Mr. Hale therefore has not shown that applying *Prost* to his case would raise serious constitutional concerns.

b. *The Suspension Clause*

Mr. Hale also relies on the Suspension Clause, which provides that the "Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. As Mr. Hale concedes, "[t]here is not 'much that is clear or obvious in the Suspension Clause area.'" Aplt. Suppl. Br. at 20 (quoting *Abernathy*, 713 F.3d at 553). And he does not show, much less make clear, how applying *Prost* to his case would raise "serious" Suspension Clause concerns. Indeed, the Supreme Court has suggested otherwise in the context of state prisoners' federal habeas review.

In *Felker v. Turpin*, 518 U.S. 651 (1996), the Court said 28 U.S.C. § 2244(b)(2)'s limits on second or successive habeas applications by state prisoners do not violate the Suspension Clause. 518 U.S. at 664. We have said in an unpublished opinion that the same logic applies to § 2255(h). *United States v. Powell*, 598 F. App'x 602, 603 (10th

Cir. 2015) (unpublished) ("We also reject Mr. Powell's assertion that applying § 2255(h)(2) to him would implicate the Suspension Clause." (citing *Felker*, 518 U.S. at 654, 663-64)).[10] Mr. Hale's response that *Felker* involved a facial attack on § 2244(b)(2), whereas his challenge to § 2255(h) is "as applied," Aplt. Suppl. Reply Br. at 6, is conclusory and does not show a Suspension Clause violation here.

Mr. Hale's only other citation, to *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), in which he says "the Supreme Court . . . held that precluding all judicial review of an important question of law would raise serious questions under the Suspension Clause," Aplt. Suppl. Br. at 20, is equally unavailing. Even if this characterization of *St. Cyr*'s holding is correct, that case, as Mr. Hale acknowledges, involved the extent to which habeas must be available in cases "involving executive detention without trial." *Id.*; *Abernathy*, 713 F.3d at 555 (discussing *St. Cyr*). And we have said that "how far (if at all) [*St. Cyr*'s statements about habeas] extend[] into the AEDPA context—as opposed to the executive detention context . . . —is far from clear." *Abernathy*, 713 F.3d at 555.

\* \* \* \*

Under *Abernathy*, Mr. Hale must establish that barring his § 2241 juror misconduct claim would raise serious constitutional concerns under either the Due Process Clause or the Suspension Clause. *See* 713 F.3d at 556-57. Because he has not done so, we do not resort to the canon of constitutional avoidance.

---

[10] Although not precedential, we find the reasoning of this unpublished opinion to be instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

- 25 -

### III.    CONCLUSION

Mr. Hale is not entitled to savings clause review of his sufficiency-of-the-evidence claim because he already had received judicial review of this issue.  And under *Prost*, Mr. Hale had an adequate and effective chance to test his juror misconduct claim in his § 2255 motion.  Because Mr. Hale has not shown that applying *Prost* to his case raises serious constitutional concerns, we do not invoke the canon of constitutional avoidance to adopt an alternative interpretation of § 2255(e).  We therefore affirm dismissal of his § 2241 application.